IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:19–CV–142–BR

| | |
|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | ) |
| v. | ) ORDER |
| | ) |
| KATHRYN MIDYETTE RUIZ, DONALD E. PONTIFF, RONALD A. PONTIFF, PHILLIP MARK PARROTT, BARRY S. MILLS, JOSEPH L. VARGA, JOHN R. HULTIN and DOES 1-10, | )<br>)<br>)<br>)<br>) |
| | ) |
| Defendants. | ) |

This matter is before the court on Ronald A. Pontiff's ("Pontiff") response to the court's show cause order. (DE # 30.) Also before the court is Kathryn Midyette Ruiz's motion for judgment on the pleadings. (DE # 24.)

**I.  BACKGROUND**

American General issued a life insurance policy, number YH00876931 (the "Policy"), to Melvin Joseph Pontiff Jr. ("Decedent") on 11 February 2009. At that time, Kathryn Midyette Ruiz (formerly Kathryn Pontiff) ("Ruiz") was designated as the primary beneficiary of the $250,000.00 Policy. In March 2009, American General received a Change of Beneficiary ("COB") request for the Policy, which listed the following beneficiaries: "Ron Pontiff ($25,000), Don Pontiff ($25,000), Joey Varga ($50,000), Barry Mills ($50,000), Mark Parrot ($50,000), and John Hultin II ($50,000)." On 7 and 8 April 2009, American General sent Decedent letters advising that the request could not be completed because the paperwork was not properly signed or dated. American General has no record of a response to either letter.

On 1 April 2019, Decedent's mother, Shelby Pontiff, notified American General of his death. Upon request, American General sent Shelby Pontiff the claim documents, to be completed by the beneficiary. On 4 April 2019, American General received correspondence from Shelby Pontiff contesting the Policy beneficiary and requesting a hold on payment of any claims. Due to the potential rival claims, American General advised it would not pay the proceeds and encouraged any claimants to submit claims. In May 2019, American General received Proof of Death Claimant's Statements from Ruiz, Donald E. Pontiff

("Donald"), Ronald A. Pontiff ("[Pontiff]"), Phillip Mark Parrott ("Parrott"), Joseph L. Varga ("Varga"), John R. Hultin II ("Hultin"), and Barry S. Mills ("Mills").

American General commenced this interpleader action on 4 October 2019, seeking judicial determination of the rights and obligations of the parties under the Policy. Ruiz timely filed an answer to the complaint, along with a counterclaim against American General. Donald, [Pontiff], Parrott, Varga, Hultin, Mills, and unnamed Does 1-10 all failed to answer the complaint. As a result, on 3 April 2020, the Clerk entered default against those named defendants. Thereafter, American General moved to deposit the Policy funds with the court and be dismissed from this action. The court allowed the motion in part and directed American General to deposit the life insurance benefits with the Clerk in accordance with 28 U.S.C. § 2041. American General complied with this order and deposited $252,712.32 with the Clerk.

(DE # 29, at 1–2 (internal citations omitted).) As a result, the court dismissed American General from this action. (Id. at 3.) Due to American General's failure to serve any of the Does 1-10, the court also dismissed Does 1-10 from this action. (Id.) In light of the default entered against them, the court ordered Donald, Pontiff, Parrott, Varga, Hultin, and Mills (collectively "Co-claimants") to show cause as to why judgment should not be entered in favor of Ruiz. (Id. at 4.)

On 12 June 2020, Pontiff, purporting to act on behalf of the Co-claimants, filed a response to the court's order.[1] Pontiff's letter acknowledges many of the same pertinent facts as American General and Ruiz, namely: Decedent and Ruiz were married, upon their separation Decedent attempted to name Pontiff, Donald, Parrott, Varga, Hultin, and Mills as the beneficiaries of the Policy, but no such change was ever effectively made. (DE # 30, at 1–2; see also DE # 1, at 3–5; DE # 24, at 2.) Pontiff contends this was the fault of Decedent's insurance agent. (DE # 30, at 1–2.) Pontiff requests permission to present a defense, urges the court to consider his evidence, and asks that Ruiz not be awarded the Policy proceeds. (Id.)

---

[1] Although the court does not generally consider pro se filings on behalf of multiple people, it will do so for purposes of the show cause response.

2

## II.     DISCUSSION

"Interpleader is a procedural device that allows a disinterested stakeholder to bring a single action joining two or more adverse claimants to a single fund." Sec. Ins. Co. of Hartford v. Arcade Textiles, Inc., 40 F. App'x 767, 769 (4th Cir. 2002) (citations omitted); see also Selective Ins. Co. of Am. v. Norris, 209 F. Supp. 2d 580, 581 (E.D.N.C. 2002). "[It] is an equitable remedy designed to protect the stakeholder from multiple, inconsistent judgments and to relieve it of the obligation of determining which claimant is entitled to the fund." Arcade Textiles, 40 F. App'x at 769. When an insurer interpleads competing claimants in North Carolina, it "waives compliance with policy provisions inserted for its benefit." Widows Fund of Sudan Temple v. Umphlett, 99 S.E.2d 791, 794 (N.C. 1957); see also Cent. States, Southeast and Southwest Areas Health and Welfare Fund v. Winn, No. 89-2080, 1990 U.S. App. LEXIS 27372, at *2–3 (4th Cir. 1990) (holding when an insurer files an interpleader action, "strict compliance with the terms of the policy governing the changing of the beneficiary is not required"); Primerica Life Ins. Co. v. Cagle, No. 3:16-cv-00100-FDW-DSC, 2017 U.S. Dist. LEXIS 53698 (W.D.N.C. Apr. 7, 2017) ("the [interpleader rule] allows for an insurer to waive any policy formalities required to change a beneficiary when the insurer chooses to interplead the claimants" (citation omitted)); 29-180 Appleman on Insurance Law & Practice Archive § 180.07 (2nd 2011) (noting several jurisdictions hold that "the insurer, by interpleading, waives compliance with the policy requirements for change of beneficiary"). "This rule rests upon the notion that such formalities function primarily to protect the insurer from double liability and, because the interpleader action serves the same protective purpose, strict construction of the contract becomes unnecessary." Fidelity Bankers Life Ins. Co. v. Dortch, 348 S.E.2d 794, 798 (N.C. 1986). Thus, when an insurer files an interpleader action with competing claimants, strict

3

compliance with the terms of the policy becomes unnecessary and "the court should determine who is entitled to the policy's proceeds by applying general equitable principles" and "the intent of the policy owner should be determinative." Cent. States, 1990 U.S. App. LEXIS 27372, at *3 (citations omitted).

### A. Response to Show Cause Order

In response to the court's show cause order, Pontiff alleges the Co-claimants have been unable to obtain counsel, urges the court to allow him to present a defense, and contends Decedent's insurance agent is responsible for the failure to properly change the beneficiaries. (DE # 30.) "Federal courts are obliged to liberally construe filings by pro se litigants." United States v. Brown, 797 F. App'x 85, 89 (4th Cir. 2019) (citation omitted); Erickson v. Pardus, 551 U.S. 89, 94 (2007). This duty may extend to "recharacterizing a filing to which a pro se litigant has attached the wrong label, allowing courts to 'avoid an unnecessary dismissal, . . . or to create a better correspondence between the substance of a pro se motion's claim and its underlying legal basis.'" Brown, 797 F. App'x at 89 (citing Castro v. United States, 540 U.S. 375, 381–82 (2003)). In light of Pontiff's request to be allowed to proceed in this action, after default having been entered against the Co-Claimants, the court will construe the response as a motion to set aside the entry of default. See J&J Sports Prods. v. Abreu, No. 5:12-cv-243, 2013 U.S. Dist. LEXIS 21630, at *1–2 (E.D.N.C. Feb. 15, 2013) (liberally construing pro se defendants' "motion for review," requesting ability to respond to the complaint, as one to set aside entry of default); Minn. Life Ins. Co. v. Rives, No. 1:10-cv-1099, 2011 U.S. Dist. LEXIS 28897 (E.D. Va. March 18, 2011) ("In substance, if not in form, the letters of [defendants] are motions to set aside entry of default . . . .").

While the district court has discretion in ruling on a motion to set aside entry of default, Vick v. Wong, 263 F.R.D. 325, 328–29 (E.D. Va. 2009), the Fourth Circuit "has 'repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits,'" DeKalb Farmers Mkt., Inc. v. Collazo Produce, Inc., No. 5:18-cv-201, 2019 U.S. Dist. LEXIS 108998, at *3 (E.D.N.C. June 28, 2019) (quoting Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc., 616 F.3d 413, 417 (4th Cir. 2010)). Thus, motions to set aside "must be 'liberally construed in order to provide relief from the onerous consequences of defaults and default judgments.'" Colleton, 616 F.3d at 421 (internal citation omitted). In deciding whether to set aside an entry of default, the district court should consider "whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the [non-moving] party, whether there is a history of dilatory action, and the availability of sanctions less drastic." Payne v. Brake, 439 F.3d 198, 204–205 (4th Cir. 2006).

### 1. Meritorious Defense

Establishing a meritorious defense only requires "a presentation or proffer of evidence, which, if believed, would permit either the [c]ourt or the jury to find for the defaulting party." United States v. Moradi, 673 F.2d 725, 727 (4th Cir. 1982) (citation omitted). "The underlying concern is . . . whether there is *some possibility* that the outcome . . . after a full trial will be contrary to the result achieved by the default." Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d 808, 812 (4th Cir. 1988) (emphasis added).

Here, Pontiff alleges Decedent attempted to name Pontiff and the other Co-claimants as beneficiaries of the Policy just two months after it was originally written. (DE # 30, at 1.) Pontiff also alleges that he and the other Co-claimants named Decedent in their own life

5

insurance policies and paid those premiums under the belief that they were named in his. (Id.) American General and Ruiz both acknowledge that a change of beneficiary form was submitted, which purported to change the beneficiary from Ruiz to the Co-claimants. (DE # 1, at 4; DE # 12, at 2.) This form, however, was not properly executed. (DE # 1, at 4; DE # 12, at 2–3; DE # 30, at 1.) Pontiff alleges this attempt to change the beneficiaries reveals Decedent's wishes and that Decedent never received notice that the change was ineffective. (DE # 30, at 1.) While Pontiff's allegations may raise a factual dispute, "disputed factual questions should be resolved in the defaulting party's favor." McKesson Medical-Surgical, Inc. v. Flower Orthopedics Corp., No. 3:17-CV-631, 2018 U.S. Dist. LEXIS 26127, at *10 (E.D. Va. Feb. 16, 2018) (citations omitted). Pontiff's contention that the attempt to change the beneficiaries reveals Decedent's true intent, if believed, establishes some possibility of a ruling in the Co-claimants' favor. See Cent. States, 1990 U.S. App. LEXIS 27372, at *3 ("the intent of the policy owner should be determinative" when insurer files a declaratory judgment in the nature of an interpleader) (citations omitted). Thus, this factor weighs in favor of setting aside the entry of default.

### 2. Reasonable Promptness, Responsibility, and Dilatory Action

"[T]he party's responsibility for the default, including whether the party took reasonably prompt action," "is evaluated 'in light of the facts and circumstances'" of the case. Vick, 263 F.R.D. at 330 (quoting Moradi, 673 F.2d at 727). While no specific time limit exists, the Fourth Circuit has allowed a case to proceed on the merits despite the party's ten-month delay before moving to set aside default. See Lolatchy v. Arthur Murrary, Inc., 816 F.2d 951, 952 (4th Cir. 1987).

The Co-claimants did not participate in the litigation until the court directed them to show cause, but promptly responded to that order. Considering that doubts should be resolved in favor

of setting aside default, the fact that the Co-claimants promptly responded to the court's show cause order weighs in their favor. Compare Vick, 263 F.R.D. at 330 (finding prompt response to motion for default judgment was sufficient even where defendant failed to respond to the entry of default entirely), with Home Port Rentals, Inc. v. Ruben, 957 F.2d 126, 133 (4th Cir. 1992) (upholding default judgment where defendants failed to respond to notices sent by the court and failed to appear at the show cause hearing).

Comparably, while the Co-claimants' defaults were not caused by the actions of their attorneys, Pontiff alleges they were caused by an inability to hire an attorney. (DE # 30, at 2.) Pontiff's sworn response to the show cause order reveals the Co-claimants' pursuit of their purported rights outside of this litigation. (See DE # 30, DE # 31-1.) Pontiff claims the Co-Claimants were rejected by four attorneys and the attachments demonstrate purported attempts to resolve this dispute with American General, even during the pendency of this litigation. (DE # 30, at 2; DE # 30-1, at 11–14.) Although the Co-claimants failed to appear in this lawsuit until six months after an answer was due from them, they have not filed untimely motions or sought extensions in an attempt to delay the litigation. Cf. McKesson, 2018 U.S. Dist. LEXIS 26127, at *21 (considering whether defendant's filings, since making its appearance, were timely). Thus, liberally construing these factors consistent with the Fourth Circuit's preference for resolving disputes on the merits, these factors likely weigh in favor of setting aside default. See Colleton, 616 F.3d at 418, 421. Nonetheless, even if the Co-claimants could be considered personally responsible or guilty of dilatory action, no one factor controls the analysis. Id. at 419.

### 3.     Prejudice to Non-Moving Party and Availability of Sanctions

In considering prejudice to the non-moving party, courts consider whether the delay:

(1) made it impossible for the non-defaulting party to present some of its evidence;
(2) made it more difficult for the non-defaulting party to proceed with trial; (3)

hampered the non-defaulting party's ability to complete discovery; and (4) was used by the defaulting party to collude or commit a fraud.

McKesson, 2018 U.S. Dist. LEXIS 26127, at *21–22 (citing Lolatchy, 816 F.2d at 952–53). "Delay in and of itself does not constitute prejudice to the opposing party." Colleton, 616 F.3d at 418 (citation omitted).

Here, there are no facts to suggest that the Co-claimants' delayed participation will affect Ruiz's ability to present evidence, proceed to trial, or complete discovery. Additionally, there is no evidence that the delay was used by the Co-claimants to collude or commit fraud. Thus, setting aside the default will not unduly prejudice Ruiz. Cf. Prescott v. MorGreen Solar Sols., Inc., 352 F. Supp. 3d 529, 538–39 (E.D.N.C. 2018) (finding prejudice where corporate defendant was no longer operational, making corporate representatives and other evidence "impossible to gather and reconstruct"). While alternative sanctions, such as monetary fines, may be available, such sanctions would not be effective, considering the Co-claimants do not likely need more monetary incentive to defend this action. See Vick, 263 F.R.D. at 331. Therefore, these factors weigh in favor of setting aside the default.

In sum, the proffer of a potentially meritorious claim to the proceeds weighs heavily in favor of resolving this case on the merits. The timely response to the court's show cause order, the lack of effective alternative sanctions, and the lack of prejudice to Ruiz also weigh in favor of setting aside the entry of default. Accordingly, the court will set aside the entry of default entered against the Co-claimants.

**B. Motion for Judgment on the Pleadings**

On 17 February 2020, Ruiz filed a motion for judgment on the pleadings contending she is the lawful beneficiary of the Policy. (DE # 25, at 4.) Her motion highlights the Co-claimants'

8

failure to respond to the complaint[2] and alleges Decedent failed to properly change the Policy beneficiary, which "forecloses the other six defendants from receiving benefits under the Policy under applicable North Carolina insurance law." (DE # 25, at 5.)

"A motion for judgment on the pleadings under Rule 12(c) is assessed under the same standards as a motion to dismiss under Rule 12(b)(6)." Columbia v. Haley, 738 F.3d 107, 115 (4th Cir. 2013) (citation omitted). Thus, "we must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." Hartford Cas. Ins. Co. v. Davis & Gelshenen, LLP, 801 F. App'x 915, 916 (4th Cir. 2020) (quoting Pa. Nat'l Mut. Cas. Ins. Co. v. Beach Mart, Inc., 932 F.3d 268, 274 (4th Cir. 2019)). "A motion for judgment on the pleadings is properly granted if it appears certain that the [nonmoving party] cannot prove any set of facts in support of its claim entitling it to relief." Id. (quoting Pulte Home Corp. v. Montgomery Cty., 909 F.3d 685, 691 (4th Cir. 2018)).

Because American General constitutes a disinterested stakeholder, the dispute lies between Ruiz and the Co-claimants. Ruiz contends she is entitled to the proceeds as a matter of law because she was the named beneficiary at the time of Decedent's death. (DE # 26, at 11.) Although she acknowledges American General, during the lifetime of Decedent, received a change of beneficiary form listing the Co-claimants as beneficiaries, (DE # 1, at 4; DE # 12, at 2), she maintains she is entitled to the proceeds because the change never took effect, (DE # 26, at 2).

---

[2] Although it is unclear whether Ruiz seeks judgment based on the Co-claimants' failure to answer, a motion for judgment on the pleadings is the incorrect procedural remedy if a defendant has failed to answer, rather, application should be made for entry of default judgment. General Motors Corp. v. Blevins, 144 F. Supp. 381, 389 (D. Co. 1956); Hampton v. Barclays Bank Del., No. 18-4071-DDC-ADM, 2019 U.S. Dist. LEXIS 127966, at *5 (D. Kan. July 31, 2019).

In support of her position, Ruiz relies on Light v. Equitable Life Assurance Soc'y of the United States, 286 S.E.2d 868 (N.C. Ct. App. 1982), and Fidelity Bankers, both of which are distinguishable from the facts at hand. In Light, the policyholder mistakenly used the wrong policy number on the change of beneficiary form. 286 S.E.2d at 869. Plaintiff filed suit against the insurance company seeking reformation of the form. Id. The court held reformation is available only when there is mutual mistake between the parties. Id. at 872. Thus, because only the policyholder mistakenly used the wrong policy number, there was no mutual mistake and reformation was an inappropriate remedy. Id. at 872–73. Despite the presence of some factual similarities, procedurally, Light differs significantly from the interpleader action filed by the insurer here.

Ruiz's reliance on Fidelity Bankers is likewise unpersuasive. The policy at issue in that case provided that all rights and privileges—including the right to change beneficiaries—were vested in the *owner* of the policy, as opposed to the insured. Fidelity Bankers, 348 S.E.2d at 797. In accordance with the terms of the policy, Mr. Dortch, the insured, transferred all ownership to Central Bank. Id. Thereafter, Mr. Dortch completed a change of beneficiary form. Id. After careful review of the interpleader rule, the court noted the form completed by Mr. Dortch may have revealed his intent to change the beneficiaries, but deemed the rule inapplicable because at the time he submitted the form he was no longer the owner of the policy. Id. Thus, "[b]ecause no change of beneficiary was attempted by Central Bank[, the owner of the policy,] during Mr. Dortch's lifetime, [the ex-wife] remained the designated beneficiary" and entitled to the funds. Id. Here, Decedent was the owner of the Policy and allegedly attempted to change the beneficiaries of the Policy during his lifetime. (See DE # 1, at 4; DE # 12, at 2; DE # 1-1, at 2.) Thus, the court's concerns in Fidelity Bankers are not at issue here.

10

Case 4:19-cv-00142-BR   Document 31   Filed 08/19/20   Page 10 of 11

As discussed above and in <u>Fidelity Bankers</u>, "strict compliance with the terms of the policy governing the changing of the beneficiary is not required" when an insurer files an interpleader action, rather, "the intent of the policy owner should be determinative." <u>Cent. States</u>, 1990 U.S. App. LEXIS 27372, at *3. Viewing the facts presented and the inferences drawn therefrom in the light most favorable to the nonmoving party, it is not certain that Decedent's failure to change the beneficiaries in accordance with the terms of the Policy forecloses the Co-claimants from receiving benefits. As such, Ruiz's motion for judgment on the pleadings will be denied.

### 1. CONCLUSION

The Clerk is DIRECTED to vacate the entries of default entered against Pontiff, Donald, Parrott, Varga, Hultin, and Mills on 3 April 2020. Ruiz's motion for judgment on the pleadings is DENIED. Pontiff, Donald, Parrott, Varga, Hultin, and Mills shall file answers, asserting any claim to the Policy proceeds, within 30 days from the date of this order. Any of them not represented by counsel must file their own pleading or sign each pleading filed on their behalf. The Clerk is DIRECED to serve a copy of this order on Pontiff, Donald, Parrott, Varga, Hultin, and Mills at the addresses listed on their respective summons.

This 19 August 2020.

_____
W. Earl Britt
Senior U.S. District Judge

11

Case 4:19-cv-00142-BR   Document 31   Filed 08/19/20   Page 11 of 11